## Commonwealth *v.* Kulik, Appellant.

Argued December 15, 1964. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*Irving Wilson Coleman,* for appellant.

*William J. Carlin,* District Attorney, for Commonwealth, appellee.

OPINION BY ERVIN, P. J., March 18, 1965:

The defendant, J. Tyler Kulik, was convicted by a jury and sentenced by the court below for the crime of abortion upon the body of Barbara Jean Feraldo. The only question presented at the oral argument was whether the trial judge committed error in permitting

evidence of a similar offense committed by the defendant upon another girl at or about the same time, where such evidence was limited to the question of defendant's credibility.

The victim, Mrs. Feraldo, testified that she and her boyfriend, Allan Joseph, met the defendant for the first time in the parking lot of a restaurant in Allentown, by pre-arrangement, apparently through an intermediary. The defendant proceeded by automobile to a Howard Johnson's Motel on the outskirts of Allentown, and Mrs. Feraldo and Mr. Joseph, acting upon the instructions of the intermediary, followed the defendant to the motel. The defendant got into their car and asked for and was paid the sum of $300.00 in cash. The defendant then instructed Joseph to register at the motel, using a fictitious name of husband and wife, and giving a false license number. Joseph was instructed to take Mrs. Feraldo to the motel room and bring the key back to the defendant. The defendant gave Joseph $10.00 or $15.00 to cover the registration costs.

After these instructions had been carried out, the defendant entered the motel room, using the key, instructed Mrs. Feraldo to disrobe partially, and thereupon proceeded to insert into her person, by means of a plastic tube of some sort, a brown, jelly-like substance. The defendant advised her that she would soon experience pain and start to bleed. He gave her a business card, bearing only the words "TIE, BETHLEHEM, PA." and the telephone number University 8-6031, and told Mrs. Feraldo to telephone him at that number if the desired result did not occur within twenty-four hours.

Although Mrs. Feraldo experienced some pain, nothing further resulted from this episode, and she therefore telephoned the defendant at the number shown on the card. A woman answered and said she would get

in touch with the defendant and have him call back. He did so, and instructed Mrs. Feraldo to go through the same procedure of registering at some motel in the general vicinity and, after having done so, again telephone the number shown on the card from a pay telephone, leaving the message "Bobby arrived at. . . .", giving the name of the motel and the room number. In compliance with these instructions, Mrs. Feraldo and Mr. Joseph registered at the Patio Court Motel near Richlandtown, Bucks County. They then telephoned the number shown on the card and left the designated message, and shortly thereafter the defendant arrived at the Patio Court Motel. On this occasion the defendant inserted a long metal instrument, somewhat thicker than a needle, pointed at the end. Mrs. Feraldo experienced a sharp sudden pain and immediately began to bleed profusely. Defendant told her that it would be necessary for her to go to a hospital, and that it would cost an additional $340.00. Mrs. Feraldo told him she did not know whether she could raise that much money, and the defendant told her to let him know when she had it. A day or two later Mrs. Feraldo again telephoned the defendant, advised him that she had raised the money, and he then took her to a private hospital in Bethlehem. When she left this hospital, she was no longer pregnant.

The defendant took the stand and admitted the various meetings at the motels and the various telephone calls but stated that he was under the impression that they wished to discuss funeral arrangements, the defendant being an undertaker.

As part of its case in chief, the Commonwealth attempted to introduce the testimony of one Judith Snyder to show that the defendant had made similar attempts to perform an abortion upon her at or about the same time in pursuance to similar arrangements. The defendant's objection to this testimony was sus-

tained. Without going into detail, the defendant endeavored to give the impression to the jury that he did not have the necessary knowledge to perform an abortion and that he stated this to the victim. The court then permitted the testimony of Judith Snyder in rebuttal for the purpose of discrediting the testimony of the defendant and very carefully told the jury that the testimony was admitted for this purpose only. The testimony was clearly admissible for this purpose: *Com. v. Albert,* 198 Pa. Superior Ct. 489, 492, 182 A. 2d 77.

Subsequent to the oral argument in this case the appellant was granted the privilege of filing a supplemental brief charging error in the trial judge's charge to the jury. He argues that it was error for the trial judge to charge as follows: "In short, weigh all the evidence very carefully on both sides. If, after you have done so, you have any reasonable doubt as to the guilt of the defendant, it is your duty to render a verdict of not guilty and acquit him. On the other hand, if you do have such reasonable doubt, it is equally your duty to render a verdict of guilty." The original record filed with this Court shows that the word "not" was inserted in the last sentence above quoted, that sentence reading "On the other hand, if you do not have such reasonable doubt, it is equally your duty to render a verdict of guilty." We are bound by the original record and therefore the appellant's argument fails.

We learned upon inquiry from the trial judge that the word "not" is in his handwriting and was inserted by him sometime after he received the official stenographer's transcript of the testimony. The charge, as certified to us by the trial judge, contained the word "not." We feel certain that the trial judge, in his original charge, did use the word "not" because immediately thereafter, when given the opportunity to make

corrections, the attorney for the appellant said nothing upon this point. We believe that if the trial judge had failed to use the word "not" the attorney for the appellant would have caught the same at that time and asked for a correction. If the trial judge, in his charge to the jury, had omitted the word "not," then, of course, he would have corrected the charge had trial counsel made the request at the time. We believe that the word "not" was used by the trial judge in his charge to the jury and therefore we will dismiss this point.

Judgment of sentence affirmed and the defendant is directed to appear in the court below at such time as he may be there called, and that he be by that court committed until he has complied with the sentence, or any part of it which had not been performed at the time the appeal was made a supersedeas.